UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

REYNALDO SALINAS, et al.,

    Plaintiffs,                                      No. C 08-1463 PJH

    v.                                               **ORDER**

AMTECK OF KENTUCKY, INC., et al.,

    Defendants.

_____/

The motion of defendant Snorkel International, Inc. ("Snorkel") for summary judgment came on for hearing before the court on November 18, 2009. Plaintiffs appeared by their counsel Wesley Todd Ball; Snorkel appeared by its counsel Daniel H. Maguire; defendants Amteck of Kentucky ("Amteck") and The Haskell Company d/b/a The Haskell Company of Florida ("Haskell") appeared by their counsel John P. Cotter; and intervenor Twin City Fire Insurance Company ("Twin City"), as agent for The Hartford Insurance Company, appeared by its counsel Kevin A. Norris. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS Snorkel's motion.

**BACKGROUND**

On June 16, 2006, Jose-Martin Salinas, Reynaldo Salinas, Macedonio Salinas, and Joaquin Salinas, Sr. were working on a construction project at a winery warehouse owned by Fosters Wine Estate, in Napa, California. Haskell was the general contractor on the project, and had hired Amteck as the electrical subcontractor. Amteck in turn contracted with U.S. Trades, a labor contractor, to supply electrical workers for the project.

The four workers were attempting to pull a bundle of four power cables and one

ground cable from the floor up to and through a 3-inch-diameter conduit that was suspended 22 feet above the floor. The cable pull started in an overhead junction box, and continued approximately 360 feet. The cable bundle then turned downward 90 degrees, terminating in a large, floor level distribution box.

Jose-Martin Salinas and Reynaldo Salinas were standing on a fully extended Model S1930 scissor lift, manufactured by Snorkel. The Model S1930 scissor lift has a 30-inch by 66-inch base, as well as a work platform that can be elevated to a height of 19 feet with a maximum weight capacity of 500 pounds. There are guard rails around the work platform that extend 39.5 inches above the work platform floor.

Jose-Martin and Reynaldo Salinas, standing on the platform of the scissor lift, elevated it to approximately 18 feet 8 inches. They were guiding the heavy gauge cable bundle over the scissor lift while a mechanical tugger pulled from the other end. Macedonio Salinas was operating the tugger at the (ground-level) hallway distribution box, while Reynaldo Salinas lubricated the cable bundle, and Jose-Martin Salinas guided the cable bundle into the conduit.

Because of the weight of the cable bundle, Reynaldo and Jose-Martin supported the cable bundle on the top, westerly rail of the work platform. Joaquin Salinas, Sr. was stationed on the ground at the cable reels. His job was to pull the cables from the reels to create slack before the five cables were pulled into the overhead conduit. He could also act as the hand signalman to indicate to Macedonio Salinas when to actuate and when to release the tugger pull rope tension. The crew made several pulls of the cable bundle when the scissor lift suddenly tipped over in an easterly direction. Jose-Martin and Reynaldo Salinas went over with the lift. Both suffered significant injuries, and the injury to Jose-Martin was fatal.

The present action consists of two consolidated actions that were originally filed in the District Court of Hidalgo County, Texas; and were subsequently removed to federal court and transferred to this district. The plaintiffs are Reynaldo Salinas; Isabel Salinas (wife of Reynaldo Salinas); Jessica Salinas (widow of Jose-Martin Salinas), individually and

on behalf of the Estate of Jose-Martin Salinas; and Gerardo Salinas and Alejandra Salinas (parents of Jose-Martin Salinas), individually and on behalf of the Estate of Jose-Martin Salinas. Twin City is a lien claimant, and has filed a complaint in intervention. Defendants are Amteck, Haskell, and Snorkel. Snorkel now seeks summary judgment on the claims asserted against it.[1]

**DISCUSSION**

A.  Legal Standard

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

---

[1] On December 29, 2009, counsel for Amteck and Haskell advised the court that the parties had agreed to a settlement of the claims asserted by plaintiffs and the intervenor against Amteck and Haskell.

B.   Snorkel's Motion

Plaintiffs assert claims of strict products liability, defective design, failure to warn, and negligence against Snorkel. Snorkel seeks summary judgment as to all claims, including the claim for punitive damages, or in the alternative, partial summary judgment. Plaintiffs do not oppose the motion as to the manufacturing or design defect claims, including claims of negligence in manufacturing or design,[2] and do not oppose the motion as to the claim for punitive damages. Accordingly, the motion is GRANTED as to those causes of action, and as to the claim for punitive damages.

With regard to the claim of failure to warn, the only remaining claim alleged by plaintiffs is that Snorkel is liable for failure to warn regarding tip-overs and load limitations. Snorkel asserts that this theory fails, because it repeatedly warned users that the scissor lift had vertical and horizontal load and side pull limits, and that tip-overs could be life-threatening.

Generally speaking, manufacturers have a duty to warn consumers about the hazards inherent in their products. Johnson v. American Standard, Inc., 43 Cal. 4th 56, 64 (2008); Anderson v. Owens-Corning Fiberglas Corp., 53 Cal. 3d 987, 1003 (1991). The requirement's purpose is to inform consumers about a product's hazards and faults of which they are unaware, so that they can refrain from using the product altogether or evade the danger by careful use. Johnson, 43 Cal. 4th at 56.

Under California law, a product may be defective because of the absence of an adequate warning of the dangers inherent in its use. Brown v. Superior Court, 44 Cal. 3d 1049, 1057-65 (1988). A failure-to-warn claim may be brought under either a theory of negligence or a theory of strict liability.

> [F]ailure to warn in strict liability differs markedly from failure to warn in the negligence context. Negligence law in a failure-to-warn case requires a plaintiff to prove that a manufacturer or distributor did not warn of a particular risk for reasons which fell below the acceptable standard of care, i.e., what a reasonably prudent manufacturer would have known and warned about.

---

[2] At the hearing, plaintiffs' counsel indicated that plaintiffs did not intend to assert a claim of negligence, except insofar as they might assert a claim of negligent failure to warn.

4

> Strict liability is not concerned with the standard of due care or the reasonableness of a manufacturer's conduct.  The rules of strict liability require a plaintiff to prove only that the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution.  Thus, in strict liability, as opposed to negligence, the reasonableness of the defendant's failure to warn is immaterial . . . "

Carlin v. Superior Court (1996) 13 Cal. 4th 1104, 1112 (1996); see also Wright v. Stang Manufacturing Co., 54 Cal. App. 4th 1218, 1230-1231 (1997).

Here, the dispute between the parties centers on whether Snorkel provided adequate warnings or instructed on the safe use of the scissor-lift.  Whether a warning is adequate depends on several factors, among them the normal expectations of the consumer as to how a product will perform, degrees of simplicity or complication in its operation or use, the nature and magnitude of the danger to which the user is exposed, the likelihood of injury, and the feasibility and beneficial effect of including a warning.  Wright, 54 Cal. App. 4th at 1231.

Here, Snorkel contends that it provided numerous, clear, urgent warnings, while plaintiffs assert that the warnings were inadequate.  Each side supports its arguments with reports, declarations, and/or testimony from one or more experts.

Snorkel's experts are Barris J. Evulich, and Gene Broadman.  In a declaration filed in support of Snorkel's motion, Mr. Evulich stated that he is a Professional Engineer with 35-plus years of experience in mechanical engineering, engineering design, and product liability for aerial platform devices.  He has been a member of ANSI/SIA A92.5 Subcommittee since 1985, and its Chairman since 1992.[3]

The A92.5 Subcommittee drafts the design, use, and operation standards for aerial platforms such as the Snorkel S1930 scissor lift.  The standards are reviewed and adopted by the A92 Main Committee.  The Occupational Safety and Health Administration ("OSHA"

---

[3] ANSI (the American National Standards Institute) is an institute that oversees the creation, promulgation, and use of norms and guidelines that apply to, among other things, aerial platform devices, and is the official United States representative to the International Organization for Standardization.

5

– part of the United States Department of Labor) has adopted a number of ANSI Standards as requirements, and has specifically incorporated by reference ANSI/SIA A92.6 as part of OSHA's Construction Scaffolding Standards in 29 C.F.R. § 1926, Subpart L, Appendix C.

On May 11, 2009, Mr. Evulich inspected the S1930 Snorkel scissor lift that is the subject of this litigation, and took photographs of the scissor lift and the warning decals that were affixed to the scissor lift. The photographs show Snorkel's warnings against overloading the scissor lift and also show the side pull load limits. The decals state that the maximum allowable horizontal force is 100 pounds.

Based on his professional education and experience, Mr. Evulich opined that the Snorkel S1930 scissor lift was in full compliance with ANSI A92.6-1999 horizontal load test and stability requirements when it was originally manufactured and shipped; and that the S1930's product warning labels and Operator's Manual were designed in full compliance with the applicable ANSI standards, and industry customs and practices.

In Mr. Evulich's opinion, it was reasonable for manufacturers to expect that OSHA regulations, ANSI standards, and manufacturers' warnings would be followed by the users of the scissor lift. Nevertheless, he opined that the occupants of the scissor lift platform did not heed those regulations, standards, and warnings, especially with regard to the safe loading of the unit; and that the unit was misused, in direct violation of ANSI A92.6-1999 when it was used to carry and support electrical wiring on the guardrails.

In a declaration filed in support of Snorkel's motion, Mr. Broadman stated that he is a Professional Engineer with fifty-plus years of experience. For the past 21 years, he has maintained an engineering consulting practice focusing on accident investigation, reconstruction, and product liability litigation. Mr. Broadman investigated the site of the accident that is the subject of this litigation, and also inspected the Snorkel S1930 scissor lift. He observed a "load limit" decal on the scissor lift, notifying operators that the "maximum allowable manual force (side pull)" was 100 pounds. Based on his professional education and experience, he opined that the cables that were being pulled by the tugger machine over and on the scissor lift's top rail exerted a horizontal force or side pull that

exceeded 200 pounds.

Plaintiff's expert is Gerald Fulghum. In a declaration filed in opposition to Snorkel's motion, he stated that he is a Safety Engineer and a Certified Safety Professional, and has 31 years' experience in construction safety. He has served as an Associate Safety Engineer and a Senior Safety Engineer for the California Division of Occupational Safety and Health ("Cal-OSHA"), and has conducted numerous Cal-OSHA compliance inspections. He has also served as a consultant and/or safety engineer on numerous jobs involving the provision of proper safeguards and precautions to mitigate hazards and to protect workers and the public from the risk of injury, including the requirements for the safe use of aerial devices and elevated work platforms.

Mr. Fulghum opined that the "most prominent danger warning" on the Snorkel S1930 warned that the aerial platform "can tip over if it becomes unstable," but that the warning did not address the horizontal forces that caused the accident at issue. He added that the only warning that could be construed as applying to limiting the horizontal forces during use "states ambiguously" that "[d]eath or serious injury will result from a tip-over accident" and warns that users should "not exceed the capacity values indicated on the platform rating placard."

Mr. Fulghum stated that during his deposition, he was shown a photograph of a warning decal that was in the form of a "pictogram" placed near the end of the S1930's platform. In his opinion, the pictogram "is not clear in conveying the warning against horizontal forces that may result in a tip-over, nor does it contain a printed message to explain or convey the meaning and intent of this warning." He asserted that "[a] clear and unambiguous danger warning to avoid or limit horizontal forces exerted on the S1930 in conjunction with a pictogram decal with concise language was not provided."

Mr. Fulghum opined further that the failure to include "a clear, readily understandable and unambiguous warning regarding the horizontal forces makes the warnings and pictogram inadequate to convey to the user the manner in which the horizontal forces (side-loading) may occur and the safe work methods to be followed to

7

prevent these forces from resulting in a tip-over." He testified that in his opinion, it is "more important to make it clear, concise and correct" and that "a pictogram can be developed for those not proficient in the English language," because "I guarantee you 30 percent of the working force doesn't know the difference between horizontal and vertical."

In its motion, Snorkel asserts, first, that the label or warning decals warned users not to exceed the rated load capacity, and advised that the maximum allowable side pull was 100 pounds. However, Snorkel notes, the evidence shows that plaintiffs were working with a mechanical tugger which generated a side pull far in excess of 100 pounds.

Snorkel notes Mr. Fulghum's contention that Snorkel failed to provide a "clear warning on the restrictions or limitations for horizontal loads (side loading) of the platform," but argues that Mr. Fulghum simply overlooked the warning decal, which states "Maximum Allowable Manual Force (Side Pull) 100 lbs (as described by Mr. Evulich in his declaration).

Second, Snorkel argues, the Operator's Manual warned users to prevent rope, electrical cords, and hoses from being caught in or on the aerial platform, but plaintiffs set up the wire pull so that the cables were resting on the platform area. In addition, the AEM Safety Manual warned users not to carry any hanging loads, but plaintiffs set up the wire pull so that wire cords or cables were hanging from the fully extended scissor lift to the ground.

Third, Snorkel contends that plaintiffs cannot demonstrate that Reynaldo or Jose-Martin Salinas read Snorkel's clear warnings. Reynaldo Salinas testified in his deposition that he did not read Snorkel's manual or warning decals, and that he did not see Jose-Martin read them either. Snorkel contends that if Reynaldo and Jose-Martin had read and heeded the warnings, they would have used a pulley to lift the cables and would have kept the excessive load off the subject scissor lift. They would have set up the job so that they did not exceed the vertical, horizontal, and side-pull limits clearly printed in the manuals and on the scissor lift itself.

In opposition, plaintiffs assert that Snorkel's warnings were inadequate because the warnings did not address horizontal force in a clear and unambiguous manner. In support,

8

they point to Mr. Fulghum's declaration, where he opined that the Operator's Manual and the safety and warning labels on the S1930 "do not contain a clear and readily understandable warning on the restrictions or limitations for horizontal loads (side loading) of the platform;" and that Snorkel "did not provide an adequate danger warning to prevent a tip-over from horizontal loads (side loading) that could be foreseeably exerted on the platform during its anticipated use."

As for Snorkel's argument that the warnings addressed "side pull," plaintiffs point to Mr. Fulghum's testimony that the warning was inadequate because "I guarantee you 30 percent of the working force doesn't know the difference between horizontal and vertical." According to Mr. Fulghum, Snorkel "should have done a better job. And from an operating perspective and as a safety engineer, the warnings and the construction would be defective to that extent . . . [T]hey were not adequate to address the issue." Plaintiffs also note Mr. Fulghum's opinion that the warnings about "side pull" should have been accompanied by a "pictogram" to make the warning clear for "those not proficient in the English language."

Plaintiffs argue that their failure to read the warnings is irrelevant, for two reasons. First, they assert that Reynaldo Salinas' failure to read the warnings does not bar his claim of inadequate warnings. They claim that it was the very nature of the warnings that caused plaintiffs' injuries, and assert that if Snorkel had provided an adequate warning, the accident would not have occurred.

Second, plaintiffs contend that Snorkel's statements concerning Jose-Martin Salinas are inadmissible, and that Snorkel's conclusion that because Reynaldo Salinas did not see Jose-Martin Salinas read the warnings, he must not have read the warnings, is entirely speculative and unsupported by evidence. Plaintiffs contend that there is a general presumption that a plaintiff has read warnings and decals, and that Jose-Martin Salinas' warnings defect cause of action should therefore not be dismissed.

In its reply brief, Snorkel argues that the court should disregard Mr. Fulghum's opinion. Snorkel asserts that Mr. Fulghum is not qualified to render an expert opinion on warnings, and that his opinions are irrelevant and should be disregarded, that he has not

9

tested his theories, that his opinions are litigation-driven, that his opinions are not based on any scientific, technical, or other specialized knowledge that can assist a trier of fact, and that his hypotheses are not generally accepted in the scientific community.

A week after Snorkel filed its reply brief, plaintiffs filed objections, asserting that Snorkel's reply was in effect a motion pursuant to Daubert v. Merrill Dow Pharms, Inc., 509 U.S. 579 (1993), seeking to exclude plaintiff's expert Mr. Fulghum.  At the hearing, the court addressed this issue, agreeing with plaintiffs that the reply brief incorporated a Daubert motion, and advising them that they would be permitted to respond in a sur-reply, not to exceed 15 pages.  The court set a deadline of November 25, 2010 for plaintiffs' response.  Plaintiffs did not file a response by that date, and did not request additional time.  Accordingly, in an order issued on December 3, 2010, the court held that the briefing was closed.

Federal Rule of Evidence 702 permits experts qualified by "knowledge, experience, skill, expertise, training, or education" to testify "in the form of an opinion or otherwise" based on "scientific, technical, or other specialized knowledge" if that knowledge will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

The proponent of expert testimony bears the burden of establishing by a preponderance of the evidence that the admissibility requirements are met.  See Fed. R. Evid. 702, Advisory Committee Notes.  Although there is a presumption of admissibility, Daubert, 509 U.S. at 588, the trial court is obliged to act as a "gatekeeper" with regard to the admission of expert scientific testimony under Rule 702. Id. at 597; see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999) (trial court acts as "gatekeeper" to exclude expert testimony that is not both relevant and reliable).

Thus, Daubert requires a two-part analysis.  First, the court must determine whether an expert's testimony reflects "scientific knowledge," whether the findings are "derived by the scientific method," and whether the work product is "good science" – that is, whether the testimony is reliable and trustworthy.  Id., 509 U.S. at 590 & n. 9, 593.  Second, the

10

court must determine whether the testimony is "relevant to the task at hand." Id. at 597.

Scientific evidence is reliable if it is based on an assertion that is grounded in methods of science-the focus is on principles and methodology, not on conclusions. Metabolife Int'l, Inc. v. Wornick, 264 F.3d 832, 841 (9th Cir. 2001). In determining whether an expert's reasoning or methodology is scientifically valid, the district court can consider "many factors," including (1) whether a scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards controlling the techniques operation; and (4) whether the technique is generally accepted. Daubert, 509 U.S. at 593-94.

Nevertheless, depending on the type of expert testimony offered, these factors may not be appropriate to assess reliability. Kumho Tire, 526 U.S. at 150. Other factors that might be considered include whether an expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion, see General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997); or whether an expert has adequately accounted for obvious alternative explanations, see Claar v. Burlington Northern R. Co., 29 F.3d 499, 502 (9th Cir. 1994).

Nevertheless, the trial court should be mindful that reliability is not determined based on the "correctness of the expert's conclusions but the soundness of his methodology." Stilwell v. Smith & Nephew, Inc., 482 F.3d 1187, 1192 (9th Cir. 2007) (quotation omitted). The trial court should ensure the expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire, 526 U.S. at 152.

Rule 702's second prong concern's relevancy, or "fit." See Daubert, 509 U.S. at 591. Expert opinion testimony is relevant if the knowledge underlying it has a "valid . . . connection to the pertinent inquiry," and it is reliable if the knowledge underlying it "has a reliable basis in the knowledge and experience of [the relevant] discipline." Id. at 592; Kumho Tire, 526 U.S. at 149.

The court finds that plaintiffs have not met their burden of establishing that Mr.

Fulghum's opinions are admissible. While Mr. Fulghum appears qualified by his experience, training, and education to be a forensics expert or a workplace safety expert, there is no indication in the record that he is a warnings expert, a human factors expert, or a licensed engineer, nor that he has the professional training or expert qualifications to opine on the formulation or design of warning or safety labels. Moreover, there is no indication in the record that he has ever investigated a case with similar facts, or that he has ever testified as a warnings expert.

Additionally, Mr. Fulghum's testimony is not reliable because it is not the product of reliable principles and methods. While his opinions are not based on scientific experimentation, they must have some objective scientific basis to which he may apply the facts of the case. However, the evidence does no reflect that he employed a methodology that would allow him to opine as an expert on warnings, as he testified that he never inspected the subject scissor lift; never looked at photos of the scissor lift to determine what safety labels it contained; never inspected the accident scene; never saw the platform rating placard on the scissor lift that stated that there was an allowable side pull of 100 pounds; relied on a generic safety manual to infer what warnings might be on the subject scissor lift; never reviewed Mr. Evulich's declaration that was submitted in support of the present motion; and never talked to Reynaldo Salinas about what Reynaldo could or could not derive from the manuals or warning/safety labels on the scissor lift.

Indeed, Mr. Fulghum testified that he has no criticism of the warning that Snorkel placed on the S1930 scissor lift. He also conceded that ANSI sets the standards for warnings for scissor lifts; that CAL-OSHA adopts the ANSI standards into their regulations; that the platform rating placard clearly states there is an allowable side pull limit of 100 pounds; that the users' manual for the subject scissor lift comported with ANSI standards; that the warning labels on the scissor lift comported with ANSI and industry standards; that nothing in ANSI standards or CAL-OSHA regulations requires the use of warnings containing "pictograms;" and that all the evidence suggests that Reynaldo and Jose-Martin did not read the warnings.

In addition, he testified that he had conducted no vetting or peer consultation in reaching his conclusions; that he had not prepared a pictogram or revisions that might be called for in the manual in this case; that he could not give written examples of alternative warnings that would be better than the warnings in this case; that a pictogram design would require vetting and human factors design input; that he could not identify a scissor lift manufacturer that employed more suitable warnings re side-pull than Snorkel; and that none of the publications attached to his declaration have a focus on manual writing or on writing/designing safety or warning labels for scissor lifts.

The court finds that plaintiffs have not provided evidence sufficient to create a triable issue with regard to whether any alleged defect in Snorkel's warnings was a substantial factor in causing the accident. Snorkel has established (via the testimony of its experts Mr. Evulich and Mr. Broadman) that its warnings were adequate, in that they were within the standards established by ANSI and CAL-OSHA. For the reasons stated above, Mr. Fulghum's opinions do not satisfy the indicia of scientific reliability required under Daubert, because his opinions do not reflect the appropriate scientific knowledge or the application of a scientific method; and do not satisfy the test for relevancy under Daubert, because

Accordingly, as Snorkel has provided evidence supporting its claim that the warnings were adequate, while plaintiffs have not provided evidence sufficient to create a triable issue as to the adequacy of the warnings, the court finds that Snorkel's motion must be GRANTED.

## CONCLUSION

In accordance with the foregoing, the court GRANTS Snorkel's motion for summary judgment.

**IT IS SO ORDERED.**

Dated: January 22, 2010

PHYLLIS J. HAMILTON
United States District Judge

13